TROUTMAN PEPPER HAMILTON SANDERS LLP
Justin D. Balser, Bar No. 027850
justin.balser@troutman.com
5 Park Plaza
Suite 1400
Irvine, CA 92614
Telephone:  949.622.2700
Facsimile:  949.622.2739

TROUTMAN PEPPER HAMILTON SANDERS LLP
Ben Lewis Wagner, Bar No. 243594
ben.wagner@troutman.com
11682 El Camino Real
Suite 400
San Diego, CA  92130-2092
Telephone:  858.509.6000
Facsimile:  858.509.6040

Attorneys for Plaintiff
SLEEP NUMBER CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Sleep Number Corporation<br><br>    Plaintiff,<br><br>v.<br><br>Anonymous Ultimate Licensee of COMFORT.COM; WWW.COMFORT.COM,<br><br>    Defendant. | Case No. 2:23-cv-00377-MTL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

## I.  INTRODUCTION

Pursuant to F.R.C.P. 55(b)(2), Plaintiff SLEEP NUMBER CORPORATION ("Plaintiff" or "SLEEP NUMBER") moves for entry of default judgment against Defendant ANONYMOUS ULTIMATE LICENSEE OF COMFORT.COM (hereafter referred to as the "Defendant" and the site hereafter referred to as the "Domain"). In December 2021, Defendant, an anonymous party, made unauthorized online access to and hijacked the Domain from Plaintiff without its permission. While holding the Domain, Defendant generated click-through ad revenues through the Domain and ran a click-bait scheme that misdirected unsuspecting consumers looking for Plaintiff's products to sites unaffiliated with Plaintiff. In stealing the Domain, Defendant cybersquatted upon the Domain and misappropriated Plaintiff's federally registered SLEEP NUMBER trademark and unregistered COMFORT.COM trademark, which consumers have come to closely associate together, and Defendant stole the Domain with the bad faith intent to profit from the confusing similarity of the stolen Domain to Plaintiff's marks. Defendant's unauthorized access to the Domain also interfered with Plaintiff's backend business operations run through the Domain.

Plaintiff acted fast to obtain injunctive relief against the cybersquatter Defendant. Plaintiff filed its Complaint on March 2, 2023. (Dkt. 1). On March 3, 2023, the Court issued its Temporary Restraining Order and authorized alternative personal service by email upon Defendant. (Dkt. 9). On March 7, 2023, and consistent with the Court's order, Plaintiff posted a $5,000 cash bond with the Clerk of Court. (Dkt. 10). On March 15, 2023, Plaintiff filed its proof of service of the summons, complaint, and temporary restraining order. (Dkt. 17). After the Court entered its TRO, registrar GoDaddy.com transferred the Domain to Plaintiff, and disclosed the reported name of the Defendant, which turned out to be a bogus name (first and last name: "Comfort Admin"). On March 17, 2023, the Court entered its preliminary injunction enjoining Defendant from further interference with the Domain, again finding Plaintiff was likely to prevail on each of its claims. (Dkt. 22). Plaintiff served the order as directed by the Court. (Dkt. 24).

Despite being served according to the Court's order, Defendant has failed to reply or otherwise participate in this litigation. (*See* Declaration of Ben L. Wagner In Support of Motion for Entry of Default and Default Judgment ("Wagner Decl.") at ¶¶ 2-5). Plaintiff filed an application for entry of default against Defendant on May 9, 2023, and the Court entered default against Defendant on May 10, 2023. (Dkt. 26-27). Based on Defendant's failure to respond or participate in this litigation, and on the Verified Complaint, Plaintiff now seeks entry of default judgment against Defendant consistent with the terms of the Preliminary Injunction entered by the Court (Dkt. 22). Specifically, Plaintiff's request for default judgment seeks injunctive relief (1) barring Defendant (and any agents thereof and controlling third parties) from interfering in any way with Plaintiff's use or possession of the COMFORT.COM domain, (2) barring Defendant from trafficking in, registering, or using any domain name containing the SLEEP NUMBER trademark and/or the COMFORT.COM trademark, or any variation of those terms, and (3) making permanent the previous provisional transfer to Plaintiff of the COMFORT.COM domain. Upon entry of default judgment, Plaintiff further requests that the Court release the bond Plaintiff posted in this action. Plaintiff respectfully requests that this Court grant its Motion for Default Judgment against Defendant.

**II.  LEGAL STANDARD**

"[I]n defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaint." *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing FRCP 55(a)). The only exception to this rule is as to the "amount of damages." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). As explained below, the well-pled factual allegations in Plaintiff's Complaint establish Defendant's cybersquatting in violation of 15 U.S.C. § 1125(d), violation of the CFAA, and conversion of Plaintiff's property.

Following the entry of default pursuant to Fed. R. Civ. P. 55(a), the Court may exercise its sound discretion and enter a judgment against the defaulting defendant under Federal Rule of Civil Procedure 55(b). *See* Fed. R. Civ. P. 55(b)(2); *see also Aldabe v.*

*Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one."). A default judgment is appropriate where the defendant "has received actual or constructive notice of the filing of the action and failed to answer." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 690 (9th Cir. 1986). In determining whether to exercise its discretion, the Court must first "assess the adequacy of service of process on the party against whom default is requested." *Penpower Tech. Ltd. v. S.P.C. Tech*., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008) (internal citations of quotation marks omitted). Once the Court determines that service was sufficient, it may consider the following factors (collectively, the "*Eitel* Factors") in deciding whether to enter a default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the *Eitel* Factors, the "factual allegations of the complaint, except those relating to the amount of damages, [are] taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987). Finally, a default judgment may be entered without a hearing if "the amount claimed is a liquidated sum or capable of mathematical calculation." *David v. Fedler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

## III.     ARGUMENT

### A.     Plaintiff has Satisfied the Procedural Requirements for Entry of Default Judgment Against Defendant

Defendant is subject to personal jurisdiction in this Court by virtue of the forum selection clauses Defendant agreed to when Defendant transferred the Domain to the registrar GoDaddy.com and registered the Domain to be held by DOMAINS BY PROXY, both of which have registration agreements with all registrants using their services that require resolution of all disputes in Arizona arising or related to the Domain. (Dkt. 1, ¶ 9; Dkt. 22, ¶ 9). Further, as to Plaintiff's first claim, *in rem* jurisdiction and venue are proper

in this District pursuant to 15 U.S.C. § 1125. (Dkt. 1, ¶ 7).

Default was entered by the clerk on May 10, 2023 (Dkt. 27)—what remains is Plaintiff's request to enter default judgment against Defendant granting the appropriate relief.

### B. Plaintiff Has Established Defendant's Liability as to Each Claim Alleged in the Complaint for Which Default Judgment is Sought

In order for the Court to enter default judgment, the Complaint must state a claim upon which Plaintiff may recover. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The Court already found Plaintiff likely to succeed in establishing liability on each of its causes of action at the TRO and preliminary injunction stages. (Dkts. 9, 22). Nothing has changed. Here, Plaintiff's Complaint pleads facts sufficient to establish Defendant's liability for (1) Cybersquatting, (2) violation of the CFAA, and (3) Conversion.

#### 1. Willful and Intentional Cybersquatting Under 15 U.S.C. § 1125(d)

Plaintiff should prevail on the merits of its first and second claims for cybersquatting because, taking Plaintiff's allegations alleged in its Complaint as true, Plaintiff has pled that it is entitled to relief.

To succeed on its claims for cybersquatting, Plaintiff must plead that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." *DSPT Intern., Inc. v. Nahum*, 624 F. 3d 1213, 1218-19 (9th Cir. 2010) (citing 15 U.S.C. 1125(d)). Each of these elements is satisfied here.

The well-pled allegations in Plaintiff's Complaint establish that Defendant registered, trafficked in, and used Plaintiff's hijacked Domain with a bad-faith intent to profit from Plaintiff's federally-registered SLEEP NUMBER trademark and unregistered COMFORT.COM trademark. (Dkt. 1, ¶¶ 17-22, 23-28). Plaintiff's SLEEP NUMBER mark (first use in 2002) is registered and famous, with extensive secondary meaning in the United States. (Dkt. 1, ¶ 12). Plaintiff acquired the COMFORT.COM domain in 1995, and since

- 5 -

that time it has consistently been a major landing page for consumers looking to purchase products under Plaintiff's Sleep Number and Select Comfort brands. (*Id.*, ¶¶ 13-14). Plaintiff's COMFORT.COM domain and trademark was used with countless millions of customers and strongly associated with the SLEEP NUMBER mark. (*Id.* ¶ 15). Plaintiff's use of the Domain for this extended period gives Plaintiff common law rights in the COMFORT.COM trademark. (*Id.*)

On or around December 31, 2021, Defendant made unauthorized access through U.S. computers and stole the Domain name registration from Plaintiff. Defendant then promptly transferred registrars to the registrar GoDaddy.Com, LLC, and enrolled in privacy protection through DOMAINS BY PROXY, LLC. On or around February 28, 2023, Defendant transferred the Domain to a server in Germany and placed the Domain for sale through GoDaddy Auctions with a "buy now" price of $495,000. While the Defendant held the Domain, Defendant generated click-through ad revenues through the Domain and rasn a click-bait scheme that misdirected unsuspecting customers looking for Plaintiff's products to sites unaffiliated with Plaintiff or its products. Further, Defendant's transfer of the Domain to servers in Germany disabled Plaintiff's back-end operations, alerting Plaintiff to Defendant's bad faith actions. (Dkt. 1, ¶¶ 11-30). Plaintiff has therefore pled facts sufficient to establish its cybersquatting claims—Defendant hijacked Plaintiff's Domain and registration and used Plaintiff's Domain name with a bad faith intent to profit from Plaintiff's COMFORT.COM mark and its connection with Plaintiff's famous SLEEP NUMBER mark. (*Id.*)  Default judgment against Defendant is warranted. (*See id.*); *see also Concord Servicing Corp. v. Concord Resol. Inc.*, No. CV-15-01280-PHX-JAT, 2016 WL 3653972, at *3 (D. Ariz. July 7, 2016) (granting default judgment on cybersquatting claim where plaintiff established that defendant intended to create "initial interest confusion," trade on Plaintiff's goodwill, and "unfairly compete.").

Defendant's theft of Plaintiff's Domain is among the most egregious examples of cybersquatting and liability is established for purposes of default judgment.

### 2. Violation of the CFAA—18 U.S.C. § 1030

Plaintiff's well-pled complaint likewise sets forth facts sufficient to support default judgment of its CFAA claim against Defendant. Defendant used online access to steal the Domain registration account without authorization and attempted to auction it for $495,000. (Dkt. 1 ¶¶ 17-19). The facts pled in Plaintiff's Complaint demonstrate that Defendant violated at least 18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(a)(5)(C) of the CFAA. (*See id*); *see also NovelPoster v. Javitch Canfield Group,* 140 F. Supp. 3d 954, 961 (N.D. Cal. 2014) (claim of unauthorized takeover of online accounts causing loss over $5,000 from inability of plaintiff to access account satisfies at least two bases for civil liability under CFAA, 18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(a)(5)(C)); *see also Xianyuan Wang v. Bailin Fang,* 2022 U.S. Dist. LEXIS 235033, *7, 2022 WL 18146304 (D. Az. Dec. 20, 2022) (injunction granted for CFAA claim based on harm from loss of use of "domain name … because only defendant could access Plaintiff's GoDaddy account" for that domain)*; Solutions v. Ahmad Rashid Mohammed,* 2012 U.S. Dist. LEXIS 163033, *6, 2012 WL 5825824 (S.D. Tex. Nov. 15, 2012).

### 3. Conversion

Last, taking the facts set forth in Plaintiff's Complaint as true, Plaintiff has pled a viable claim for conversion under applicable Minnesota law. For the state law claim of conversion, over which the Court has supplemental jurisdiction, Minnesota law applies as the property owner SLEEP NUMBER is located there, the conversion occurred there, and SLEEP NUMBER did nothing to direct its activities to Arizona. *CRS Recovery v. Laxton,* 600 F.3d 1138, 1142 (9th Cir. 2010) (choice of law rules apply to law of state where plaintiff's conversion injury occurred); (Dkt. 22 ¶ 22).

Minnesota holds that "a domain name is property" and "is property for the purposes of protection from conversion." *Sprinkler Warehouse v. Systematic Rain,* 859 N.W.2d 527, 531 (Minn. App., 2015) applying inter alia *Kremen v. Cohen,* 337 F.3d 1024 (9th Cir. 2003). "The elements of common law conversion are: (1) plaintiff holds a property interest; and (2) defendant deprives plaintiff of that interest." *Staffing Specifix v.TempWorks Mgmt.*

*Servs.,* 896 N.W.2d 115, 125 (Minn. App. 2017). As set forth in Plaintiff's Complaint, Plaintiff has established that it holds a property interest in the Domain, and that Defendant deprived Plaintiff of that interest by hijacking the Domain registration and ultimately transferring the Domain server to Germany, which prevented Plaintiff from accessing its Domain registration and controlling its back-end operations through the Domain. (Dkt. 1 ¶¶ 11-30). In short, the well-pled facts set forth in Plaintiff's Complaint support its claim for conversion and entry of default judgment against Defendant is appropriate. *See id.*

### C.     The *Eitel* Factors Warrant Entry of Default Judgment

The discretionary factors set forth in *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.1986) also weigh in favor of default judgment. "In applying this discretionary standard, default judgments are more often granted than denied." *Affinity Grp., Inc. V. Balser Wealth Mgmt., LLC*, No. 05CV1555 WQH (LSP), 2007 WL 1111239, at *1 (S.D. Cal. Apr. 10, 2007). Where a defendant "has yet to respond or participate in this litigation, . . . [t]raditionally, this means the first, fifth, sixth, and seventh *Eitel* factors are easily addressed." *L. Offs. of Diana Maier PC v. DianaMaierLaw.com*, No. CV-20-02235-PHX-MTL, 2021 WL 3565733, at *3 (D. Ariz. Aug. 12, 2021).

The first factor, prejudice, is shown by default admitting the truth of the pleadings— since Plaintiff "would be without other recourse for recovery." *DianaMaierLaw.com,* 2021 WL 3565733 at *3 (citing *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). Plaintiff would be severely prejudiced absent the entry of default judgment. *See Eitel*, 782 F.2d at 1471-72. Defendant should not be able to deprive Plaintiff of permanent injunctive relief by failing to respond to this suit. Absent default judgment, Plaintiff has no other recourse. *See Paramount Pictures Corp. v. Does,* No. 2:21-CV-09317-MCS-SK, 2022 WL 2189633, at *3 (C.D. Cal. Apr. 20, 2022) ("Defendants also remain unidentified [] so it will be difficult for Plaintiffs to get recovery without default judgment. This supports entering default judgment.").

The second and third factors (merits of claim and sufficiency of complaint) "are often

analyzed together and require" consideration of whether Plaintiff "has stated a claim on which it may recover." *DianaMaierLaw.com*, 2021 WL 3565733, at *3. Here, Plaintiff has met each factor as illustrated in the discussion of each cause of action, *supra*. Defendant's hijacking of Plaintiff's Domain and cybersquatting constitutes an egregious scheme that the evidence shows was deliberately targeted to profit in bad faith off of Plaintiff's marks. (Dkt. 1, ¶¶ 11-30). Plaintiff's verified Complaint sets forth facts in sufficient detail—facts which were corroborated by documents produced in this action (Dkt. 14)—to support entry of default judgment against Defendant for Defendant's abuse of and wrongful access and misappropriation of Plaintiff's domain. (*See id.*); *see also DianaMaierLaw.com*, 2021 WL 3565733, at *4 (factors two and three supported default judgment where plaintiff "has shown there was bad faith intent to profit" from mark).

The fourth *Eitel* factor considers the amount at stake in relation to the seriousness of defendant's conduct. *See Eitel*, 782 F.2d at 1471-72. Where, as here, Plaintiff "does not seek monetary damages" "this factor weights in favor of entry of default judgment." *See DianaMaierLaw.com*, 2021 WL 3565733, at *4.

The fifth factor, possible dispute of material facts, favors default judgment since all factual allegations in the complaint are already "taken as true based on the entry of default judgment." *TeleVideo Sys., Inc.*, 826 F.2d at 917-918. Here, because "all well-pleaded facts in the [verified] complaint are taken as true . . . no genuine dispute of material facts would preclude granting" Plaintiff's motion for default judgment. *See DianaMaierLaw.com*, 2021 WL 3565733, at *3. No reasonable version of disputed facts could save Defendant from liability for hijacking Plaintiff's Domain for Defendant's own profit. *See id.* There is no disputing the material facts of liability in this case, as the TRO and preliminary injunction already showed in force – Defendant had ample opportunity to appear and defend but presumably saw the strength of claims and Court's analysis of the merits and found no scenario presenting a defense worth making. Defendant should not be rewarded for failing to appear in these proceedings.

The sixth factor also "weighs in favor of default judgment," as Plaintiff "served

Defendant [] to the best of its ability under its statutory obligation, [and] it is unlikely that its failure to answer was the result of excusable neglect." *DianaMaierLaw.com*, 2021 WL 3565733, at *3 (citing *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006)). Defendant's choice not to respond despite so many orders and items served on it in this case is certainly a deliberate and voluntary choice, and with knowledge that the domain would be taken away permanently if it did not speak up.

The seventh factor, the policy for decisions on the merits, does not disfavor default judgment since "the existence of Rule 55(b) indicates that this preference, standing alone, is not dispositive." *DianaMaierLaw.com*, 2021 WL 3565733, at *3 (citing *PepsiCo, Inc.*, 238 F. Supp. At 1172); *see also Affinity Group v. Balser Wealth Mgmt.*, 2007 WL 111239 *3 (S.D. Cal. Apr. 10, 2007) ("termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). In fact, because "where a defendant fails to appear and respond as occurred here, a decision on the merits is impossible and default judgment is appropriate … this factor weighs in favor of default judgment." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012). Moreover, unlike a naked default 21 days after service, this default was preceded by both TRO and preliminary injunction proceedings.

In sum, as "default judgments are more often granted than denied," (*Affinity Grp.* 2007 WL 1111239 *1), and the factors indicate default judgment is warranted here, consideration of the *Eitel* factors confirms that default judgment should be entered.

### D. The Court Should Award Plaintiff Injunctive Relief and Order The TRO / Preliminary Injunction Bond Returned

Plaintiff requests that the Court grant a permanent injunction: (1) barring Defendant (and any agents thereof and controlling third parties) from interfering in any way with Plaintiff's use or possession of the COMFORT.COM domain, (2) barring Defendant from trafficking in, registering, or using any domain name containing the SLEEP NUMBER trademark and/or the COMFORT.COM trademark, or any variation of those terms, and (3) making permanent the previous provisional transfer to Plaintiff of the COMFORT.COM

- 10 -

domain. Plaintiff also seeks release of the cash bond lodged with the Court in this action by Plaintiff. (Dkt. 10).

The Lanham Act gives the Court "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable … to prevent a violation" under the Lanham Act. 15 U.S.C. § 1116(a). Plaintiff meets the requisite considerations for a permanent injunction including: (1) irreparable injury, (2) inadequacy of remedies at law, (3) balance of hardships, and (4) the public interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 at 391; 15 U.S.C. § 1116(a).

As the Court's prior TRO and preliminary injunction orders already found, the test for injunctive relief is readily met. (Dkt. 22). "The standard for determining whether a permanent injunction should be granted is 'essentially the same as the standard for a preliminary injunction, except that the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits.'" *Elhalwani v. Bourji*, 2020 U.S. Dist. LEXIS 45517, *5 (C.D. Cal. Feb. 28, 2020) *quoting Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987).

Plaintiff therefore respectfully requests that the Court enter default judgment against Defendant, including injunctive relief restraining Defendant from future acts against Plaintiff's Domain and marks, for the reasons already found warranting preliminary injunctive relief. (Dkt. 22 pp.7-9). Plaintiff is presumed irreparably harmed under its cybersquatting claim. 15 U.S.C. § 1116(a); *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 WL 4962661, 2021 U.S. Dist. LEXIS 137845, *16-18 (N.D. Cal. Jul. 23, 2021). The irreparable harm is substantiated beyond the presumption, including rendering more difficult day-to-day operations, threatening its goodwill with customers and productivity, and the risk that the COMFORT.COM domain in Defendant's name would be sold for further wrongful use. (Dkt. 22 pp.7-8).

Defendant's harm to Plaintiff's brand and its customers cannot be fully unwound, but it can be prevented from continuing further by permanently enjoining the Defendant from its wrongful behavior. Further, Defendant is evading the law by refusing to participate

in this litigation. Defendant has demonstrated a willful intent to target Plaintiff's brand and its consumer marketplace by hijacking Plaintiff's website and by misappropriating its well-known marks, which necessitates broad and lasting injunctive relief.

These considerations justify an injunction barring future cybersquatting and use of Plaintiff's SLEEP NUMBER trademark and/or the COMFORT.COM trademark, or any similar variant thereof, barring Defendant from any future interference with Plaintiff's Domain, and making permanent the injunctive relief already granted. *See Concord Servicing Corp. v. Concord Resol. Inc.*, No. CV-15-01280-PHX-JAT, 2016 WL 3653972, at *4 (D. Ariz. July 7, 2016) (granting permanent injunction where the "Court has already found that the Complaint makes out a prima facie claim of . . . cybersquatting" and "[c]oupled with the preceding well-pleaded facts and documentary evidence, the Court finds that Plaintiff has sufficiently established that it suffered irreparable injury.").

Finally, Plaintiff posted a $5,000 bond for the TRO, which was made applicable to the preliminary injunction as well. (Dkt. 10; Dkt. 22 pp.9-10.) Plaintiff requests that the Court release the $5,000 cash bond deposited with the Court in connection with the Court's prior injunctive relief, as in light of default judgment and the facts taken as true, and permanent injunctive relief being entered, the appropriate course is to return the interim bond at the conclusion of the case. *Almeida v. TabelaFipeBrasil.com*, 2020 U.S. Dist. LEXIS 116650, *18-19, 2020 WL 3525822 (E.D. Va. Jan. 24, 2020) (ordering clerk to return preliminary injunction bond upon entry of default judgment); *Amazon Content Servs. LLC v. Kiss Library*, 2021 U.S. Dist. LEXIS 242489, *19-20, 2021 WL 5998412 (W.D. Wa. Dec. 17, 2021) (same).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that default judgment be entered against Defendant on claims for cybersquatting, violation of the CFAA, and conversion. Plaintiff requests that the default judgment include an order for injunctive relief (1) barring Defendant (and any agents thereof and controlling third parties) from interfering in any way with Plaintiff's use or possession of the COMFORT.COM domain, (2) barring

- 12 -

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:23-CV-00377-MTL

152482805

Defendant from trafficking in, registering, or using any domain name containing the SLEEP NUMBER trademark and/or the COMFORT.COM trademark, or any variation of those terms and (3) making permanent the previous provisional transfer to Plaintiff of the COMFORT.COM domain. And the $5,000 bond posted by Plaintiff (Dkt. 10) should be ordered returned by the clerk. A Proposed Order to this effect has been submitted concurrently herewith.

Dated:     May 16, 2023            TROUTMAN PEPPER HAMILTON
                                   SANDERS LLP


                                   By: s/*Ben Lewis Wagner*
                                       Justin D. Balser
                                       Ben Lewis Wagner

                                       Attorneys for Plaintiff
                                       SLEEP NUMBER CORPORATION